IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MATTHEW LA BREC,

                Plaintiff,

  v.

KRISTINE LYON and JAMES T. MURPHY,

                Defendants.

OPINION and ORDER

22-cv-284 jdp

---

Pro se plaintiff Matthew La Brec is suing medical staff for failing to provide him with adequate medical care at Columbia Correctional Institution. He originally named several defendants for failing to treat his chronic pain between 2020 and 2022. I dismissed some claims at the screening stage and La Brec has voluntarily dismissed other claims through settlement.

Claims against two defendants remain. La Brec contends that Kristine Lyon (a nurse practitioner) failed to treat his pain in March 2021 and James T. Murphy (a physician) failed to treat his pain between April and June 2022, in violation of the Eighth Amendment and state common law.

Each defendant has filed a separate motion for summary judgment. Dkt. 87 and Dkt. 97. I will grant Lyon's motion and deny Murphy's motion. Lyon is entitled to summary judgment because she offered La Brec treatment options, but he rejected them, and he doesn't give a reason why. I will deny Murphy's motion for summary judgment because a reasonable jury could find that he provided no treatment to La Brec other than over-the-counter medications that Murphy knew were not effective for La Brec, and he had no medical basis for declining to consider other treatment. That's enough to support a claim for negligence and an Eighth Amendment violation.

UNDISPUTED FACTS

The following facts are undisputed.

Lyon is an advanced practice nurse prescriber. Between October 2018 and December 2022, Lyon was a locum tenens nurse practitioner for the Wisconsin Department of Corrections. She worked at the Columbia prison beginning in March 2021.

Murphy is a physician. He worked at the Columbia prison from October 2021 to July 2022.

La Brec was a prisoner in the custody of the Wisconsin Department of Corrections during the events relevant to this case. Since 2015, La Brec has suffered from back pain. A March 2019 MRI showed a mild concentric disc bulge at L4-5, mild bilateral neural foraminal stenosis, and a small posterior broad-based disc bulge at L5-S1.

From 2018 to 2020, La Brec had a prescription for gabapentin while he was housed at the Wisconsin Resource Center, which is not governed by the Wisconsin Department of Corrections' formulary restrictions. When La Brec was transferred to Columbia in August 2020, Justin Ribault, a physician, discontinued the gabapentin prescription because of La Brec's history of substance abuse issues and because La Brec had a normal EMG study in 2018.[1] Ribault prescribed duloxetine, acetaminophen, and ibuprofen instead. La Brec stopped taking duloxetine because of side effects, including a pounding heartbeat, headache, and blurry vision.

Lyon examined La Brec in March 2021 in response to complaints of back pain that he described as an "achy, deep-seated pain." La Brec asked Lyon for a gabapentin prescription.

---

[1] The parties say little about La Brec's past substance abuse. But I know from a previous case that La Brec was convicted of using methamphetamines in 2014. *LaBrec v. Syed*, 19-cv-804-jdp, 2023 WL 1927064, at *1 (W.D. Wis. Feb. 10, 2023).

2

Gabapentin poses a risk for abuse and diversion, so DOC policy restricts its availability. For example, it may not be prescribed unless other medications have failed, an EMG has demonstrated that the prisoner has neuropathy, the prisoner has functional limitations because of nerve damage or pain, and the prisoner has no history of diverting medication. Lyon determined that La Brec did not qualify for gabapentin under these restrictions because his description of pain was not consistent with nerve-related pain, his EMG result was normal, and there was no evidence of functional impairment. Lyon discussed other pain medications that La Brec could try, but La Brec refused any medication but gabapentin.

Murphy began treating La Brec in November 2021. At the time, La Brec had prescriptions for acetaminophen, Extra-Strength Tylenol, and ibuprofen.[2] During his first examination of La Brec on November 9, Murphy diagnosed La Brec with lumbar herniated disc with sciatica down the left leg and neuropathic pain. During this appointment, La Brec told Murphy that Tylenol and ibuprofen were not effective for relieving his pain. Murphy increased the dose of La Brec's prescription for ibuprofen and continued his prescription for acetaminophen and Extra-Strength Tylenol. Murphy also noted that La Brec was scheduled for another EMG. Depending on the results of the EMG, Murphy planned to submit an application to the medical director to treat La Brec's pain with pregabalin.[3]

---

[2] The parties don't explain the difference between La Brec's prescriptions for acetaminophen and Tylenol, but the progress notes state that the acetaminophen was for 250 milligrams and the Tylenol was for 500 milligrams. Dkt. 103-1, at 25. The parties also don't explain why La Brec had both prescriptions.

[3] Neither side explains what pregabalin is. The Mayo Clinic describes it as an anti-seizure medication that is also sometimes prescribed for nerve pain. It goes under the brand name Lyrica. Mayo Clinic, "Pregabalin," *available at* https://www.mayoclinic.org/drugs-supplements/pregabalin-oral-route/side-effects/drg-20067411?p=1; *see also Claypool v. Hamilton,* No. 23-cv-343, 2023 WL 5748612, at *1 (E.D. Wis. Sept. 6, 2023) (describing

Murphy examined La Brec three times in December 2021 to address complaints of low-back pain with left-sided radicular and neuropathic symptoms. During each of these appointments, La Brec told Murphy that Tylenol and ibuprofen were not effective for relieving his pain. Murphy did not make any changes to La Brec's medication.

In February 2022, Murphy examined La Brec once for complaints of pain in his lower back and left leg. By then, Murphy had received La Brec's EMG results. La Brec told Murphy that his pain was "severe," that Tylenol and ibuprofen were not helping his pain, and that he needed something different. Murphy went over the EMG results with La Brec, but Murphy did not take any action based on the results. Murphy did not make changes to La Brec's pain medication.

In March 2022, Murphy examined La Brec for complaints of neuropathic pain radiating down his left leg from his back, among other things. La Brec told Murphy that Tylenol and ibuprofen were not working. Murphy diagnosed La Brec with chronic degenerative joint disease and left radicular pain. Although the EMG results were normal, Murphy stated that he would apply for La Brec to receive pregabalin therapy. In his application, Murphy wrote that La Brec's pain was a 7 out of 10, that the pain interfered with La Brec's sleep, and that gabapentin had provided La Brec with relief in the past.

On April 5, 2022, the medical director denied Murphy's application for pregabalin, reasoning that La Brec's EMG showed no abnormality and that he had a diagnosis for severe substance use disorder.

---

pregabalin as a treatment for nerve pain); *Thomas v. Kijakazi*, No. 21-cv-1385, 2023 WL 5279646, at *11 (E.D. Wis. Aug. 16, 2023) (same).

On April 22, Murphy met with La Brec to discuss the denial of the application. Murphy diagnosed La Brec with chronic moderate low-back pain, but Murphy did not make any changes to La Brec's pain medication. La Brec asked Murphy to resubmit an application for pregabalin that included a restriction for "crush and float," meaning that La Brec's pregabalin would be crushed and floated in water to prevent diversion. Murphy's notes indicate that he would "consider" submitting a new application, but he did not do so. Murphy also wrote "Physical therapy" in his progress notes under "Assessment/Plan."

Murphy's last examination of La Brec was on June 27, 2022. La Brec complained about back pain, among other things. Murphy ordered a urinalysis to rule out hematuria or an occult ureteral stone as causes of back pain. Murphy did not change La Brec's pain medication or order other treatment. (The parties do not say whether La Brec received a urinalysis and, if so, what it showed.)

Murphy left his employment with the Department of Corrections in July 2022.

None of the parties explain what the status of La Brec's back pain is now or what treatment he is receiving for it, if any.

ANALYSIS

A.  Overview of the claims and legal standards

La Brec is proceeding on two narrow claims under the Eighth Amendment and Wisconsin's common law of negligence: (1) Lyon failed to adequately treat La Brec's pain during an appointment in March 2021; and (2) Murphy failed to adequately treat La Brec's pain between April 2022 and June 2022.

5

The Eighth Amendment to the U.S. Constitution prohibits cruel and unusual punishment. In the medical context, the Supreme Court has interpreted that to mean that prison staff may not be "deliberately indifferent" to a prisoner's "serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976).

A "serious medical need" is a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584–85 (7th Cir. 2006). "Deliberate indifference" means that the defendant is aware of an excessive risk to the prisoner's health or safety, but the defendant is disregarding the risk by consciously failing to take steps to help the prisoner. *See Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997). In the medical context, deliberate indifference may be inferred when the defendant's conduct is "blatantly inappropriate," *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996), or "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). In other words, "[a] constitutional violation exists only if no minimally competent professional would have so responded under those circumstances." *Johnson v. Dominguez*, 5 F.4th 818, 825 (7th Cir. 2021) (internal quotations omitted)).

Stated in simpler terms, a plaintiff asserting a medical-care claim under the Eighth Amendment must prove four things: 1) the prisoner needed medical treatment; 2) the defendant knew that the prisoner needed medical treatment; 3) the defendant consciously refused to take reasonable steps to provide the needed treatment; and 4) the defendant's action or inaction harmed the plaintiff. Federal Civil Jury Instructions of the Seventh Circuit § 7.17 (2017); *Hunter v. Mueske*, 73 F.4th 561, 565 (7th Cir. 2023).

Wisconsin law defines medical negligence as the failure of a medical professional to "exercise that degree of care and skill which is exercised by the average practitioner in the class to which he belongs, acting in the same or similar circumstances." *Sawyer v. Midelfort*, 227 Wis.2d 124, 149, 595 N.W.2d 423, 435 (1999); *Schuster v. Altenberg*, 144 Wis. 2d 223, 229, 424 N.W.2d 159, 161–62 (1988). A negligence claim has four elements: (1) a breach of (2) a duty owed (3) that results in (4) harm to the plaintiff. *Paul v. Skemp*, 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 625 N.W.2d 860 (2001). In other words, the plaintiff must show that the defendant failed to use the required degree of skill exercised by an average medical professional in the defendant's field, that the plaintiff was harmed, and that there is a causal connection between the defendant's failure and the plaintiff's harm. Wis. JI–Civil 1023.

Both defendants move for summary judgment on La Brec's claims against them. On a motion for summary judgment, the question is whether there are any genuine factual disputes that could make a difference to the outcome of the case, or, stated another way, whether a reasonable jury could find for the nonmoving party, after drawing all reasonable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Loudermilk v. Best Pallet Co., LLC,* 636 F.3d 312, 314–15 (7th Cir. 2011); *Montgomery v. American Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010).

**B.  Kristine Lyon**

La Brec had only one appointment with Lyon. According to Lyon, La Brec asked for a gabapentin prescription, but he did not meet the criteria for that medication, so she declined to prescribe it. She discussed alternative pain medications with Lyon, but La Brec refused to consider other options.

La Brec did not respond to Lyon's summary judgment motion, so I must accept Lyon's version of the facts as true. *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 543, 653 F.3d 532 (7th Cir. 2011); "Motions for Summary Judgment," § II.C., *attached to* Dkt. 48. Under those facts, Lyon is entitled to summary judgment. A prisoner is not entitled to the treatment of his choice, *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019), including his choice of pain medication, *Arce v. Wexford Health Sources Inc.*, 75 F.4th 673, 681 (7th Cir. 2023). So La Brec was not entitled to gabapentin if other reasonable options were available. La Brec cites no evidence that Lyon had reason to believe that the alternatives she offered would be inadequate or fell below the standard of care, so his claims against Lyon fail.

## C.  James Murphy

Murphy treated La Brec from November 2021 until Murphy left the Columbia prison in July 2022. La Brec's claim focuses on a portion of that time between April and June 2022, beginning when the DOC medical director denied Murphy's request to prescribe pregabalin for La Brec on April 5. At that point, La Brec contends that Murphy should have done something more than simply continue with the same treatment regimen that had been prescribed previously.

Murphy seeks summary judgment on La Brec's claims under both the Eighth Amendment and state law. On both claims, Murphy contends that La Brec can't prove causation. On the Eighth Amendment claim, Murphy contends that La Brec's back pain was not a serious medical need and that Murphy exercised professional judgment in deciding how to treat La Brec. On the negligence claim, Murphy contends that La Brec cannot prevail because he does not have an expert.

8

1. **Causation**

To prevail on an Eighth Amendment or negligence claim, a plaintiff must prove that the defendant's conduct caused him harm, *Fields v. Wharrie*, 740 F.3d 1107, 1111 (7th Cir. 2014), *Paul*, 2001 WI 42, at ¶ 17, but causation is generally left for the jury to decide, *Hunter v. Mueske*, 73 F.4th 561, 567–68 (7th Cir. 2023). Murphy contends that La Brec can't prove harm for two reasons. First, he points to the expert report of Alfred Joshua, a physician who specializes in emergency medicine and correctional healthcare. Dkt. 101-2. But Joshua did not offer an opinion about causation, so his report isn't helpful for that issue.

Second, Murphy says that La Brec can't prove causation because "La Brec's preexisting issues related to his back pain cannot be considered as part of the causal injury in this case." Dkt. 98, at 18. Murphy doesn't explain what he means by that, but I understand his position to be that he can be held liable only for exacerbating La Brec's pain, not for failing to eliminate or diminish the pain he already had. That is not the law. Under the Eighth Amendment, a defendant can be held liable for unnecessarily prolonging pain, not just making it worse. *See Perez v. Fenoglio*, 792 F.3d 768, 777–78 (7th Cir. 2015). Similarly, on a medical negligence claim, the question is whether the defendant could have lessened or avoided the plaintiff's injury had he provided treatment. *Ehlinger v. Sipes*, 155 Wis.2d 1, 13–14, 454 N.W.2d 754 (1990). The fact that La Brec had a preexisting condition didn't relieve Murphy from providing reasonable care.

The court will not dismiss La Brec's claims against Murphy on causation grounds.

**2. Eighth Amendment**

Murphy raises two issues related to La Brec's Eighth Amendment claim only: (1) La Brec's back pain was a not serious medical need; and (2) Murphy exercised professional judgment in deciding how to treat La Brec. Neither issue can be resolved as a matter of law.

**a. Serious medical need**

As for La Brec's need for treatment, Murphy says that there is no objective evidence that La Brec was in pain, and "[n]ormal aches and pains" don't trigger a duty to act under the Eighth Amendment. Dkt. 98, at 14. A reasonable jury could find that La Brec had a serious medical need. A 2019 MRI showed that La Brec had stenosis and multiple disc bulges in his spine. Murphy himself diagnosed La Brec with multiple chronic conditions that could cause back pain, and Murphy sought approval to prescribe pregabalin for La Brec. So a reasonable jury could infer from Murphy's own conduct that La Brec needed medical treatment. In any event, serious medical needs are not limited to conditions supported by objective evidence. *Walker v. Benjamin*, 293 F.3d 1030, 1039–40 (7th Cir. 2002). Regardless of its cause, pain can qualify as a serious medical need. *Gonzalez v. Feinerman*, 663 F.3d 311, 314 (7th Cir. 2011).

As for the severity of La Brec's pain, he says that his pain is "very severe," Dkt. 112, ¶ 20, and that it interfered with his ability to engage in basic activities such as sleeping, exercising, and sitting in a chair, *id.*, ¶ 43. That's enough to sustain an Eighth Amendment claim. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997) (medical need is serious if it significantly affects the prisoner's daily activities).

**b. Conscious failure to provide reasonable treatment**

A reasonable jury could also find that Murphy consciously failed to provide La Brec with reasonable treatment. It is well established that a physician can violate the Eighth

10

Amendment if he persists with treatment that he knows to be ineffective. *Arce*, 75 F.4th at 681; *Thomas v. Martija*, 991 F.3d 763, 772 (7th Cir. 2021); *Machicote v. Roethlisberger*, 969 F.3d 822, 828 (7th Cir. 2020). By April 2022, La Brec had told Murphy several times over the course of several months that Tylenol and ibuprofen were not helping his pain.[4] (La Brec also says that he told Murphy at least once that ibuprofen upset his stomach. Dkt. 112, ¶ 9.) Murphy does not say that he believed La Brec was malingering or exaggerating his symptoms. That is prima facie evidence that Murphy should have tried something new or at least explained why he believed maintaining the same pain-treatment regimen was appropriate.

Murphy says nothing in his proposed findings of fact about why he declined to make any changes or provide any other treatment. And he points to no medical records in which he made such a judgment. Murphy's medical expert, Alfred Joshua, also says nothing in his report about why it was reasonable to continue with ineffective treatment. Joshua says that prescribing Tylenol and ibuprofen was reasonable "based on the entirety of the diagnostic tests, specialist diagnosis, history of substance use disorder, and the [duloxetine] trial." Dkt. 101-2, at 8. But Joshua's ignores the fact that Tylenol and ibuprofen weren't working for La Brec, and, more fundamentally, Joshua doesn't explain *how* any of the factors he listed supported Murphy's decisions to make no changes. An opinion without foundation isn't helpful. *Downing v. Abbott Laboratories*, 48 F.4th 793, 809 (7th Cir. 2022).

---

[4] Murphy purports to dispute this fact on the ground that La Brec failed to cite admissible evidence to support it. Dkt. 118, ¶ 2. Murphy doesn't explain this objection, and I will overrule it. La Brec cited his own declaration for the fact, and the declaration identifies specific appointment during which La Brec told Murphy that the pain medication wasn't working. Dkt. 112, ¶¶ 9, 14, 19, 20, 23, 24. The averments in the declaration are not hearsay because La Brec is not offering them for the truth, only for showing notice to Murphy.

Neither Murphy nor Joshua allege or imply that they had run out of treatment options. Without any explanation from Murphy, a reasonable jury could find that he did not use medical judgment when deciding how to treat in La Brec between April and June 2022. A failure to use medical judgment is evidence of an Eighth Amendment violation. *See Johnson v. Rimmer*, 936 F.3d 695, 707 (7th Cir. 2019).

Both Murphy and Joshua make the point that Murphy tried to prescribe pregabalin, and it wasn't Murphy's fault that the medical director refused to approve the prescription. But this fact isn't helpful for Murphy. La Brec isn't blaming Murphy for the medical director's decision.[5] Rather, La Brec's claim against Murphy is about how Murphy chose to respond after learning that pregabalin was not an option. The fact that Murphy attempted to prescribe pregabalin is evidence that Murphy agreed with La Brec that a change was needed. Murphy cites no authority for the view that an attempt to provide care immunizes a physician's decision to do nothing when the attempt is unsuccessful.

Murphy says in his brief that he *did* try other options: "Murphy prescribed physical therapy and recommended that La Brec continue following up with Dr. Choi for a possible repeat injection." Dkt. 98, at 16. Murphy doesn't cite any evidence to support the statements in his brief, and in his reply to La Brec's response to Murphy's proposed findings of fact, Murphy admits that he did not actually order physical therapy. Dkt. 116, ¶ 60. Rather, he wrote the words "Physical therapy" on his progress notes under "Assessment/plan," Dkt. 103-1, at 15. Murphy doesn't identify any evidence that he took steps to provide La Brec with physical therapy or that La Brec actually received therapy.

---

[5] The medical director, Daniel LaVoie, was also a defendant in this case, but LaBrec settled his claims against LaVoie. Dkt. 107.

As for the reference to "a possible repeat injection," it appears to relate to a progress note from February 2023 in which Murphy wrote that La Brec "is being followed by Dr. Choic at the . . . pain clinic for ESI injections." Dkt. 103-1, at 19. As with the physical therapy, Murphy doesn't cite any evidence that he ordered staff to schedule an appointment at a pain clinic, and La Brec denies that he received an appointment, Dkt. 112, ¶ 39.

A reasonable jury could find that Murphy knew that La Brec had a serious medical need and that Murphy also knew that La Brec needed treatment other than Tylenol and ibuprofen, but Murphy refused to provide it, despite an ability to do so. I will deny Murphy's motion for summary judgment on La Brec's Eighth Amendment claim.

### 3. Negligence

Murphy raises one additional argument related to La Brec's negligence claim. Murphy contends that Wisconsin law requires an expert in all medical negligence cases to establish the standard of care. I have rejected that view multiple times, including in a previous case filed by La Brec. *See, e.g., Shipp v. Hobday*, No. 17-cv-955-jdp, 2023 WL 3377628, at *2 (W.D. Wis., 2023); *LaBrec v. Syed*, No. 19-cv-804-jdp, 2021 WL 4206690, at *5 (W.D. Wis. Sept. 16, 2021).

"[N]o expert is necessary when common knowledge provides a basis for finding negligence." *Jones v. Edge*, No. 16-cv-848-jdp, 2018 WL 2301846, at *4 (W.D. Wis. May 21, 2018); *see also Gil v. Reed*, 535 F.3d 551, 557–58 (7th Cir. 2008) (expert testimony is not needed to establish the standard of care under Wisconsin law when a plaintiff "show[s] that an ordinary person could conclude from common experience that he could not have been injured had his medical providers exercised care"). A reasonable jury could find without the assistance of an expert that Murphy did not use medical judgment when deciding how to treat

13

La Brec. It would be within a lay person's experience to find that it falls below the standard of care to continue with ineffective treatment simply because one alternative treatment is unavailable, without considering other options. As the record stands now, the jury could find that's exactly what Murphy did in this case.

I conclude that expert testimony isn't required on La Brec's negligence claim against Murphy, and I will deny Murphy's motion for summary judgment on that claim.

ORDER

IT IS ORDERED that:

1. Kristine Lyon's motion for summary judgment, Dkt. 87, is GRANTED and plaintiff Matthew La Brec's claims against Lyon are DISMISSED with prejudice.

2. James T. Murphy's motion for summary judgment, Dkt. 97, is DENIED.

Entered October 23, 2023.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge